UNITED STATES of America, Plaintiff–Appellee,

v.

David Michael PARZIALE, a/k/a Michael Thomas Barheimer, Defendant–Appellant.

No. 91–4030.

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1991.

Dominick M. Tamburo, III, New Orleans, La. (court appointed), for defendant-appellant.

Josette L. Cassiere, Robert W. Gillespie, Jr., Asst. U.S. Attys., Joseph S. Cage, Jr.,

U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before THORNBERRY, DAVIS, and WIENER Circuit Judges.

WIENER, Circuit Judge:

Defendant–Appellant David Michael Parziale appeals his conviction on one count of conspiracy to import marijuana, one count of attempting to import marijuana, and two counts of transporting a stolen aircraft in interstate commerce. Finding no reversible error, we affirm.

## I.

### FACTS

Parziale and two other men, Ronald Mertens and Randall Davis, plotted to smuggle marijuana from Jamaica into Louisiana. Mertens and Davis agreed to put up the money for the marijuana purchase and Parziale agreed to fly an aircraft to Jamaica, pick up the marijuana and fly back to Louisiana with the marijuana on board.

Mertens testified that in June of 1986, he and Parziale drove to Kissimmee, Florida, and attempted on two separate occasions to steal an amphibious aircraft. They aborted their attempts to steal the aircraft when they were unable to start it.

Approximately six months later, Mertens and Parziale arranged an offloading site in central Louisiana for the delivery of the Jamaican marijuana. Davis had already purchased aviation fuel and placed it in a secluded area near Bayou Boeuf in Rapides Parish, Louisiana.

A Lake Renegade 250 amphibious aircraft bearing registration number N14034 (the "plane" or the "aircraft"), was stolen from Florida Lake Aircraft Corporation in Kissimmee, Florida.[1]

On December 22, 1986, Parziale landed an amphibious aircraft in Bayou Boeuf, Louisiana. Mertens met Parziale there and they refueled the aircraft with the fuel that Davis had hidden. Parziale then flew the plane the short distance from Bayou Boeuf to the Lake Buhlaw Airport in Pineville, Rapides Parish, Louisiana. Mertens met Parziale at the Lake Buhlaw Airport and drove him to the Plantation Manor Hotel where Parziale registered as Michael Barheimer and spent the night.

The next day, Mertens drove Parziale back to the Lake Buhlaw Airport. The airport refueling records show that an aircraft, tail number N14034, received fuel on December 23, 1986. According to Mertens, he was told by Parziale that he would return to Bayou Boeuf with the Jamaican marijuana on December 25, 1986. Parziale left the Lake Buhlaw airport on December 23 flying a Lake Renegade 250. He landed a Lake Renegade 250, tail number N14034, in Montego Bay at approximately 4:00 P.M. on December 24, 1986. On December 25, 1986, Parziale filed a flight plan[2] and took off from Montego Bay in the Lake Renegade 250. Shortly thereafter his plane crashed into the sea. Parziale was rescued and admitted to a Jamaican hospital. The plane sank with its contents and was never recovered.

## II.

### PROCEEDINGS

Parziale was indicted on four counts: one of conspiracy to import marijuana into the United States in violation of 21 U.S.C. §§ 952(a) and 963; two of interstate transportation of a stolen aircraft in violation of 18 U.S.C. § 2314; and one of attempted importation of four hundred pounds of marijuana in violation of 21 U.S.C. §§ 952(a) and 963. He pled not guilty to all

---

1. The actual date the plane was stolen is unknown, but the owner of the dealership from which it disappeared testified that, after being informed by the manufacturer that it had been stolen, he reported its disappearance to the police on January 2, 1987.

2. The destination listed on the flight plan is unknown because the district court sustained Parziale's objection to introduction of the flight plan.

counts, was tried before a jury, and was found guilty on all four counts. On each of Counts I, II, and III, Parziale was sentenced to a four year term of imprisonment, the sentences to run concurrently. On Count IV, he was sentenced to four years suspended imprisonment and five years of supervised release to follow his release from prison. The district court entered judgment, and Parziale timely appealed.

### III.

### DISCUSSION

A. *Parziale was charged under the correct statute*

 Counts II and III of the indictment charged Parziale with transporting a stolen aircraft in interstate commerce in violation of 18 U.S.C. § 2314. This section provides in pertinent part that

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Parziale contends that the government cannot properly charge him under § 2314 because 18 U.S.C. § 2312 specifically prohibits the interstate transportation of stolen aircraft.[3] Section § 2312 reads:

> Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

The government asserts that the existence of an alternate, more narrow statutory violation does not preclude prosecution under the general, more broad, statute. We agree.

This is an issue of first impression in our circuit, but we are instructed by other circuits that have dealt with similar issues. In *United States v. Grenagle*[4] the defendant had stolen a van containing cash, cartons of cigarettes, and cases of canned drinks and food. He was convicted of both the interstate transportation of a stolen motor vehicle in violation of § 2312 and the interstate transportation of stolen goods in violation of § 2314. The goods were worth only $3,824.90. Because § 2314 applies to the interstate transportation of stolen goods worth more than $5,000, the facts would not support a conviction under § 2314 unless the value of the van was aggregated with the value of its contents. Although the Court of Appeals for the Fourth Circuit reversed the conviction under § 2314, it wrote that:

> Doubtless, the government had a choice. It could have prosecuted this defendant under either section. If it chose § 2314, the value of the van could have been considered in a determination that the value of the transported goods exceeded $5,000. Having prosecuted him under § 2312 for the transportation of the van, however, his conviction under § 2314 may not stand when consideration of the value of the van was essential to that prosecution and conviction.[5]

Thus, the court reasoned that the government could have prosecuted the defendant under either § 2312 or § 2314 but could not convict him for violating both when the van itself was essential to each conviction.

In *United States v. Ogden*,[6] the First Circuit held that § 2312 and § 2314 are "overlapping and not mutually exclusive."[7] In *Ogden* the court found that the defendant could be prosecuted under § 2314 when the defendant obtained parts from a stolen motor vehicle and combined them with other parts to make a different vehicle. The court wrote that notwithstand-

---

**3.** There is no statutory definition of goods, wares or merchandise. 18 U.S.C. § 2311 defines aircraft as "any contrivance used or designed for navigation or flight in the air."

**4.** 588 F.2d 87 (4th Cir.1978), *cert. denied* 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979).

**5.** *Id.* at 88.

**6.** 703 F.2d 629 (1st Cir.1983).

**7.** *Id.* at 639.

ing the difference in the penalties, "the prosecutor can properly focus on the stolen parts rather than the motor vehicle."[8] Although the facts in *Ogden* differ from those in the instant case, the First Circuit clearly found that the existence of the provision that applies specifically to motor vehicles and aircraft does not prohibit the prosecution of violations involving such properties under the broader section.

We also note that at least one court has prosecuted a defendant for interstate transportation of a stolen aircraft under § 2314 when § 2312 was also available.[9]

We agree with the First and the Fourth Circuits that the government is. not prohibited from charging a defendant under a broad statute simply because a narrower statute is applicable and available.[10] Parziale could have been charged under either § 2312 or § 2314. He was sentenced to no more than four years in prison, a term within the limits of both § 2312 and § 2314. Charging and prosecuting him under the broader section, § 2314, was not error.

B. *The evidence was sufficient to sustain a verdict*

When reviewing the sufficiency of the evidence, we consider whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt."[11] We must "view the evidence and all reasonable inferences that may be drawn from the evidence in a light most favorable to the government."[12] This standard is the same for both direct and circumstantial evidence.[13]

The elements of the offenses charged in Counts II and III are: (a) that the defendants transported a stolen aircraft in interstate or foreign commerce; (b) that the defendants knew the aircraft was stolen; and (c) that the aircraft was worth $5,000 or more.

Parziale maintains that the government failed to prove that he transported a stolen plane in interstate commerce or that he knew that the plane was stolen. Parziale claims that, at most, the government proved that the Lake Renegade 250 and the defendant were in the same area of Louisiana at the same time. His argument is specious. Although "the mere presence of an individual in the vicinity of stolen goods is not sufficient in itself to support a conviction,"[14] the evidence shows considerably more than Parziale's mere presence in the vicinity of the stolen plane.

At trial, the government produced evidence that links Parziale to the plane both in Louisiana and in Jamaica. The Lake Buhlaw Airport refueling records show that a plane with the tail number N14034 was refueled there on December 23, 1986. Parziale's co-conspirator, Mertens, testified that Parziale left the Lake Buhlaw Airport on December 23, 1986, in a plane that looked similar to the plane reported stolen from Kissimmee, Florida. Furthermore, the air traffic controller at Montego Bay, Jamaica identified Parziale as the pilot who arrived in and departed from Montego Bay in the plane bearing tail number N14034.

Mertens' testimony that he and Parziale attempted to steal a similar aircraft from Florida Lake Aircraft six months earlier is circumstantial evidence from which a reasonable jury could conclude that the defendant knew that the plane was stolen.[15]

8. *Id.*

9. *See United States v. Ballerstedt,* 234 F.2d 526 (3rd Cir.), *cert. denied* 352 U.S. 930, 77 S.Ct. 229, 1 L.Ed.2d 164 (1956).

10. *See also United States v. Hopkins,* 916 F.2d 207, 218 (5th Cir.1990); *United States v. Smith,* 915 F.2d 959, 961–62 (5th Cir.1990).

11. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other*

*grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

12. *United States v. Prieto–Tejas,* 779 F.2d 1098, 1101, *reh. denied* 783 F.2d 1260 (5th Cir.1986).

13. *Bell,* 678 F.2d at 549, n. 3.

14. *United States v. Henderson,* 524 F.2d 489, 491 (5th Cir.1975).

15. *See United States v. Webster,* 750 F.2d 307, 340 (5th Cir.1984), *cert. denied* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985).

The evidence tending to prove that Parziale, knowing that the plane was stolen, transported the plane in interstate commerce is circumstantial, but a reasonable jury could conclude, beyond a reasonable doubt, that Parziale transported a stolen aircraft from Florida to Louisiana to Jamaica. Under the proper standard of review for insufficient evidence claims, a conviction should be reversed only when the evidence is so weak or so contrary to guilt that it would compel a jury to entertain a reasonable doubt of the defendant's guilt.[16] The evidence in this case is not so weak that it would compel a jury to maintain a reasonable doubt as to Parziale's guilt.

## C. *Admission of evidence of prior acts*

In February of 1990, well before the trial, the government filed a notice of its intent to introduce evidence of prior acts. In August of 1990, the government filed a memorandum supporting the admissibility of evidence of other crimes. At the trial, two United States Customs employees testified that in December of 1983 Parziale was detained and searched by Customs officials. They testified that Parziale had just arrived on a flight from Jamaica when officials noticed that he was wearing baggy pants and detected the odor of marijuana. A search revealed that Parziale had concealed four and one-half pounds of marijuana on his body.[17] When this testimony was adduced at trial, the defense objected to its admissibility under F.R.E. 404(b), but did not request a limiting instruction. The government requested a limiting instruction, and the district court replied that it would include such an instruction in the general charge. The trial court did not, however, include a limiting instruction in its charge to the jury, but neither Parziale nor the government objected to the charge or to the court's failure to include a limiting instruction.

Parziale contends that the admission of the testimony of the Customs officials regarding his 1983 arrest for attempting to smuggle marijuana into the United States constitutes reversible error. He argues that the evidence of the extrinsic offense should not have been admitted because: (1) he did not raise lack of intent as a defense to the charges that he attempted to import or conspired to import marijuana; and (2) the probative value of the evidence was outweighed by the prejudicial effect.

F.R.E. 404(b) states that

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining the admissibility of extrinsic evidence, the district court "[f]irst must determine that the extrinsic offense evidence is relevant to an issue other than the defendant's character."[18] The government asserts that the testimony was offered as evidence of Parziale's intent to import marijuana into the United States from Jamaica, as evidence of his knowledge of the conspiracy to import marijuana, to show a similarity of offense, and to show that his statements to his co-conspirators that he could bring in marijuana from Jamaica were true. Evidence that the defendant had been apprehended while attempting to smuggle marijuana into the United States from Jamaica clearly was relevant to the defendant's intent to import marijuana, to the defendant's knowledge of a conspiracy to import marijuana, and to corroboration of his co-conspirators' testimony. Because the testimony was relevant to an issue other than the defendants'

---

**16.** *United States v. Del Aquila–Reyes,* 722 F.2d 155, 157 (5th Cir.1983).

**17.** The Customs officials testified that their standard procedure was to turn an arrestee over to the appropriate police authority for further action. They had no knowledge whether Parziale was ever charged, tried or convicted after his arrest.

**18.** *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

character, it was admissible under Rule 404(b).

Contrary to Parziale's assertion that the extrinsic offense evidence was not relevant because he never put his intent at issue, we have held that "in a conspiracy case the mere entry of a not guilty plea raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." [19]

■ Parziale also makes the conclusory assertion that the probative value of the testimony was outweighed by its prejudicial effect, but provides no support for his contention. The trial court maintains broad discretion over the admissibility of evidence, "including its relevance, probative value, and prejudicial effect. A district court's ruling on admissibility will not be reversed on appeal absent an abuse of discretion." [20] Parziale's bald assertion that the probative value of the evidence was outweighed by its prejudicial effect does not show an abuse of discretion on the part of the trial court.

■ Parziale further contends that even if the extrinsic offense evidence was admissible under Rule 404(b), the trial court's failure to provide a limiting instruction to the jury constitutes plain error. Although Fed.R.Crim.P. 30 provides that a defendant waives his right to appeal the lack of a limiting instruction if he failed to request such an instruction when the testimony was admitted or when the court charged the jury, Fed.R.Crim.P. 52(b) provides the "[p]lain errors or defects affecting substantial rights may be noticed [on appeal] although they were not brought to the attention of the trial court." Thus, by combining Rules 30 and 52 of the Federal Rules of Criminal Procedure, the courts have cre-

ated a plain error standard of review for a trial court's failure to include a limiting instruction in the jury charge in those instances in which the defendant failed to object at trial.

Where, as here, a limiting instruction is not requested by defense counsel, the court's failure to provide such an instruction on its own is tested under the plain error standard of Fed.R.Crim.P. 52(b).[21]

The trial court's failure to give a limiting instruction in this case does not constitute plain error. Under the plain error standard, the defendant

"must demonstrate that the charge, considered as a whole" was so deficient "as to result in a likelihood of a grave miscarriage of justice," ... or he must show "exceptional circumstances" where the "errors are obvious" or otherwise "seriously affect the fairness integrity, or public reputation of judicial proceedings." [22]

Furthermore, "failure to give limiting instructions is generally held not to be plain error." [23] In the instant case, the court's charge instructed the jury on the burden of proof and explained the essential elements of each count of the indictment. The trial court also emphasized, that "[t]he defendant is not on trial for any act or conduct or offense not alleged in the indictment." Parziale has failed to demonstrate that the district court's omission of a limiting instruction, especially in light of the comprehensiveness of the charge, did not produce a jury charge so deficient as to result in a grave miscarriage of justice.

## IV.

## CONCLUSION

Parziale was properly charged under 18 U.S.C. § 2314 for the interstate transporta-

19. *United States v. Prati,* 861 F.2d 82, 86 (5th Cir.1988).

20. *Id., citing United States v. Vincent,* 648 F.2d 1046, 1051 (5th Cir.1981).

21. *Prati,* 861 F.2d at 86.

22. *United States v. Jones,* 673 F.2d 115 (5th Cir.), *cert. denied* 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982), *citing United States v. Thev-*

*is,* 665 F.2d 616, 645 (5th Cir.), *cert. denied* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982), *and quoting United States v. Varkonyi,* 645 F.2d 453, 460 (5th Cir.1981) and *United States v. Adams,* 634 F.2d 830, 836 (5th Cir. 1981).

23. *United States v. Bermudez,* 526 F.2d 89, 97 (2nd Cir.1975), *cert. denied* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976), *citing United States v. Bozza,* 365 F.2d 206 (2nd Cir.1966).

tion of a stolen aircraft. There was sufficient evidence to support a jury verdict on the two counts related to such conduct. Furthermore, the trial court properly admitted testimony of another criminal act under F.R.E. 404(b), and the court's failure to provide a limiting instruction in the jury charge with respect to that testimony was not reversible error.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.