IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 99-50568
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NOBLE ROME,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

March 17, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:

I

Noble Rome pleaded guilty to conspiracy to steal firearms, in violation of 18 U.S.C. § 922(u). The stipulated factual basis for his plea explained that, beginning on or about February 7, 1998, Rome agreed with another person to break into Kramer's Wood and Metal Works in Fredericksburg, Texas, to steal firearms. Rome attempted to break into Kramer's on February 9 but was interrupted by the owner and fled with his accomplice. Had they not been interrupted and had they gained access to a locked safe, Rome and his accomplice would have stolen firearms within Kramer's business inventory.[1]

The PSR found that on February 7, 1998, Rome had attempted to break into another business, Texas Jack's, with his accomplice in

---

[1] The stipulated factual basis does not state how many guns Rome and his accomplice intended to steal; all references to the number of guns involved were stricken from the factual basis.

order to steal firearms. During the course of the attempted robbery, Rome set off the alarm, and he and his accomplice fled. The PSR stated that, had they not been interrupted by the alarm, Rome and his accomplice "would have stolen about 70 firearms that were stored in glass cases and were hanging on the wall at this business." The PSR also found that, had they not been interrupted during the attempted robbery of Kramer's and had they gained access to a locked safe, Rome and his accomplice "would have stolen 17 firearms within Kramer's business inventory." Rome told the probation officer preparing the PSR that he had committed the crimes because he was addicted to drugs and needed the money to buy drugs.

The PSR assessed Rome a base offense level of 12, pursuant to U.S. Sentencing Guidelines Manual § 2K2.1(a)(7). This was enhanced by six levels, pursuant to § 2K2.1(b)(1)(F), based on the determination that Rome's offense involved more than 50 firearms. The PSR assessed another two-level enhancement, pursuant to § 3B1.4, because Rome used a juvenile accomplice, but it also awarded him a three-level acceptance-of-responsibility reduction. Rome's resulting total offense level was 17, which, with a criminal history score of II, subjected him to a guidelines range of 27 to 33-months of imprisonment. Absent the enhancement, his offense level would have been 12, which would have subjected him to a guidelines range of only 12 to 18 months' imprisonment.

Rome objected to the six-level adjustment pursuant to § 2K2.1(b)(1)(F), asserting that the facts upon which the adjustment was based were purely speculative. He urged that the government had failed to establish any specific intent on his part to steal all of the guns in the inventories of the stores he had conspired to burglarize. Rome alleged that there was no evidence that he and his accomplice were even aware that there were 87 guns at Kramer's

and Texas Jack's.  The government countered that Rome had conspired to steal guns and that, had he not been interrupted, he would have in fact stolen guns.  It argued that, at Texas Jack's, there were 70 guns which were readily available; thus, the government contended, it was logical to assume that Rome and his accomplice could have taken what was plainly in view.

The district court overruled Rome's objection, stating,

> . . .the defendant had agreed with another person to break into and steal firearms from two establishments.  The Court, for the record, will find that the total of 87 firearms would have been stolen if the burglary had not been or burglaries had not been interrupted.  So the Court concurs with the probation officer's calculations of the offense level, which includes a six-level increase for the number of weapons involved in this offense.

The district court adopted the findings and conclusions contained in the PSR and sentenced Rome to 33-months imprisonment, followed by a three-year supervised-release period.  Rome filed a timely notice of appeal.

II

A defendant may appeal a sentence imposed under the sentencing guidelines if the sentence "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range . . . ."  18 U.S.C. § 3742(a).  This court reviews the sentencing judge's application of the sentencing guidelines de novo and accepts the sentencing judge's findings of fact unless they are clearly erroneous.  United States v. Rodriguez-Guzman, 56 F.3d 18, 20 (5th Cir. 1995).  A district court's findings of fact will be deemed clearly erroneous

3

only if the reviewing court is left with the definite and firm conviction that a mistake has been made.  <u>United States v. Graves</u>, 5 F.3d 1546, 1556 (5th Cir. 1993).

Rome challenges the six-level increase, pursuant to § 2K2.1(b)(1)(F), asserting that the district court's determination that he would have taken 87 guns had he been successful in entering the targeted businesses is clear error.  Rome argues that the government failed to present any evidence that he specifically intended to take 87 firearms and thus contends that the enhancement did not apply.

In this case, the PSR does state the Rome and his partner "would" have stolen all the guns if they had not been interrupted. The district court relied on this information.  When a district court has relied on information from a PSR, the defendant bears the burden of demonstrating that the information is unreliable or untrue.  <u>United States v. Vital</u>, 68 F.3d 114, 120 (5th Cir. 1995). If a defendant presents no rebuttal evidence, the facts contained in the PSR may be adopted without further inquiry so long as the facts rest on an adequate evidentiary basis.  <u>United States v. Alford</u>, 142 F.3d 825, 832 (5th Cir.), <u>cert. denied</u>, 119 S. Ct. 514 (1998).

A PSR generally bears sufficient indicia of reliability to be considered as evidence by a sentencing judge when making factual determinations.  <u>United States v. Narviz-Guerra</u>, 148 F.3d 530, 537 (5th Cir.), <u>cert. denied</u>, 119 S. Ct. 601 (1998).  An exception is made, however, when the PSR simply gives "a recitation of the conclusions of . . . the prosecutor."  <u>United States v. Elwood</u>, 999 F.2d 814, 817 (5th Cir. 1993).

4

In this case, the statement that the defendant and his accomplice would have stolen all the guns if they had not been interrupted was amended to the PSR only at the request of the government.  "Bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR," through the request of the prosecutor.  See id. at 817-18.  Thus, these statements are insufficient standing alone to support the enhancement unless otherwise supported by the record.

The guideline for a conspiracy conviction mandates that the base offense level from the guideline for the substantive offense[2] be used, "plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." § 2X1.1(a); see United States v. Waskom, 179 F.3d 303 (5th Cir.), cert. denied, 120 S. Ct. 547 (1999).  The burden of proof is on the government.  United States v. Ayala, 47 F.3d 688, 689 (5th Cir. 1995).  The application notes explain:

> the only specific offense characteristics from the guideline for the substantive offense that will apply are those that are determined to have been specifically intended or actually occurred. *Speculative offense characteristics will not be applied.*  For example, if two defendants are arrested during the conspiratorial stage of planning an armed bank robbery, the offense level ordinarily would not include aggravating factors regarding possible injury to others, hostage taking, discharge of a weapon, or obtaining a large sum of money, because such factors would be speculative. . . .  In an attempted theft, the value of the items that the defendant attempted to steal would be considered.

§ 2X1.1, comment (n.2) (emphasis added).

---

[2] The substantive offense is the offense that the defendant was convicted of conspiring to commit.  See § 2X1.1, comment (n.2).

5

The substantive offense of theft of firearms provides for a base offense level of 12.  See § 2K2.1(a)(7).  Subsection (b) of that guideline, entitled "Specific Offense Characteristics," permits incremental increases based on the number of firearms involved in the offense.  See § 2K2.1(b)(1)(A)-(F).  If the theft involved 50 or more guns, six levels are added.  § 2K2.1(b)(1)(F).

Rome argues that the application of this enhancement was error because the government failed to present any evidence to show "to a reasonable certainty" how many firearms he intended to steal, as is required by § 2X1.1(a).  He asserts that the enhancement was based upon speculation, which is prohibited by the commentary to § 2X1.1.   Rome contends that the government did not present any evidence to show that he knew how many guns were in the stores, explain how he and his accomplice planned to carry them away, or specify any details about the conspiracy which would demonstrate the requisite intent.  He asserts that the probation officer's and district court's finding that he would have taken all of the guns in each store confused intent with capability, i.e. that he could have taken all of the guns, not that he in fact intended to do so.

The government argues that the enhancement was not error.  The government renews its assertion that because there were a total of 87 guns in the stores Rome attempted to burglarize and because he confessed that he would have stolen guns from those stores, it follows that Rome would have taken all of the guns in the stores. The government contends, for the first time on appeal, that given Rome's confessed motive (supporting his drug habit) and his prior record of burglaries, it is reasonable to believe that he and his accomplice would have taken all of the firearms in both stores.

Conversely, the government urges, it is illogical to conclude that, had they gained entry, Rome and his accomplice would have limited themselves to only a few firearms. The government argues that because there were two men and a getaway car, Rome and his accomplice could have taken more than 50 firearms, had the burglaries been successful.

There are few cases which specifically address the interplay between § 2X1.1(a) and § 2K2.1(b) or the arguments raised in this appeal. Rome relies on United States v. Waskom, 179 F.3d 303 (5th Cir. 1999). In Waskom the defendants were convicted of conspiracy to rob an armored car and they received a two level increase for an intent to steal the property of a financial institution. Id. at 314. There was clear evidence, however, that armored cars usually contain the property of financial institutions (and not just private payrolls and receipts), and that the defendants had conducted surveillance on the armored car during its previous pickups and deliveries to banks. Id. Waskom demonstrates that the determination about the conspirators' intent to commit specific offense conduct can be linked with the specificity of their plan and their awareness of details about their target. In the current case, however, there was no evidence that the defendant and his accomplice conducted surveillance, knew anything about how many guns were kept at the targeted businesses, or had any plan other than to steal some guns.

The government relies on United States v. Chapdelaine, 989 F.2d 28, 35 (1st Cir. 1993), in which a defendant was convicted of conspiracy to rob an armored truck. In that case, the defendant's enhancement was based on the finding that the intended loss was

7

$1,000,000, which represented the total amount of money in the truck.  Id.  The First Circuit upheld the enhancement despite the fact that there was no direct evidence showing that the defendant specifically intended to steal all $1,000,000, because the comments to § 2X1.1 allow consideration of the entire value of the item that the defendant attempted to steal.  Id.  In Chapdelaine, however, the defendant did not challenge the finding of an intent to take all of the money, since he was found with a large green laundry bag, arguably evidencing a plan to steal as much money as could possibly be carried. Instead, the defendant simply argued that the proposed enhancement was improper because no robbery had actually occurred and thus any loss was merely speculative.  Id. at 35.

In the end, the government's attempt to justify a six-level enhancement in this case rests solely on the fact that one of the stores had more than fifty guns on display and it would have been *possible* for Rome and his juvenile accomplice to load them all into a car if they had tried to.  This alone, however, is clearly insufficient to demonstrate the requisite intent with 'reasonable certainty'; instead, it is the type of speculative inference that the sentencing guideline comments specifically disapprove.

Similarly, Rome's addiction to drugs and his prior history of committing burglaries do not constitute evidence of his intent to steal all of the guns at both stores.  A close look at his criminal history instead suggests that Rome did not intend to steal the stores' entire inventories: historically, Rome stole only a small number of items at a time to support his drug habit.  Similarly, the fact that Rome and his accomplice drove a car to the attempted burglaries is not evidence of their intent to take all of the guns

8

available, especially since there was no evidence regarding the size of the car and the size of the guns at issue.

To allow such inferences to support this sentencing enhancement would essentially charge every burglar with intending to steal every visible item within a targeted location so long as it would be "possible" to load all of the items into a getaway car. While it might not be surprising if a burglar did in fact steal everything in sight when it was possible, it would not be "illogical," as the government contends, if he did not do so, for a variety of reasons. For example, every additional second at a crime scene increases a burglar's chance of getting caught. The fact that Rome and his accomplice fled both attempts at the drop of a hat actually demonstrates their understanding of that basic tenet.

We therefore hold that the evidence in this case does not support a finding of the requisite intent necessary for the proposed enhancement. The sentencing order is VACATED, and the case is REMANDED for resentencing consistent with this opinion.

VACATED and REMANDED.