UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-21151
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

RAZA HUSAIN,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
                Southern District of Texas
                    H-98-CR-105-1
_____
                    December 5, 2000

Before BARKSDALE and BENAVIDES, Circuit Judges.[*]

BENAVIDES, Circuit Judge:[**]

        Defendant-appellant Raza Husain was convicted of two counts

of possessing machineguns, two counts of transferring machineguns,

one count of tampering with a witness, and one misdemeanor count of

_____

        [*]   Judge Vela, District Judge of the Southern District of
Texas, was a member of the panel that heard oral arguments but did
not participate in the decision.  This case is being decided by a
quorum, 28 U.S.C. § 46(d).

        [**]   Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

failure to make appropriate entry of records. The district court sentenced him to a total term of imprisonment of seventy-one months. He now appeals raising numerous arguments, including: insufficiency of the evidence; double jeopardy violations; erroneous admission of prior bad acts; failure to provide a limiting instruction with respect to the extrinsic evidence; and various sentencing errors. Concluding that he has not shown that he is entitled to relief, we AFFIRM.

I.   Factual and Procedural History

Appellant Raza Husain (Husain) started his own security company in 1984. Six years later he became a licensed firearms dealer. The firearms license allowed Husain to sell firearms in general, but not machineguns.

In February of 1996, ATF Agent Tinker received information from another agent indicating that four foreign nationals were engaged in the business of selling machineguns. One of these individuals was identified as Abdulhady. The agents initiated surveillance on Abdulhady.

On February 23, Abdulhady agreed to sell a machinegun to a confidential informant. At 2 a.m. on February 24, the surveillance officers at Abdulhady's apartment observed the arrival of a vehicle registered to Husain. The driver of the vehicle exited it, opened the trunk and removed a package. Abdulhady spoke to the individual and carried the package into his apartment. The driver then re-entered his car and drove away. Officer Miller of the Houston

Police Department (HPD) followed the car until a marked car could stop it and identify the driver, Husain.

Abdulhady delivered the package to the confidential informant, who tested the weapon and determined that it was a machinegun. The confidential informant paid Abdulhady $1200 for the weapon and left. The weapon was a Norinco SKS rifle bearing serial number 1500449.

On March 6, the surveillance officers observed Abdulhady's departure from the apartment and his subsequent return. Husain then arrived in his car. Once inside the security gate, a package was removed from Husain's vehicle and taken into Abdulhady's residence. It apparently took both Husain and Abdulhady to carry the package.

Agent Torres, who was operating undercover, learned that certain weapons were ready for delivery. The package was then taken from Abdulhady's residence and replaced in Husain's car about thirty minutes after it had been taken inside the apartment.

Agent Torres and Abdulhady had decided to conduct the transaction at the Fiesta parking lot located on Bellaire Boulevard, Houston, Texas. Once Agent Torres was able to confirm that the package contained machineguns, the arrest signal was given. Abdulhady was taken into custody and the agents seized five more weapons, all Norinco SKS rifles bearing the following serial numbers: 11480481, 204599, 20009321, 12037511, and 11538567.

After Abdulhady's arrest, Husain became the focus of the

3

investigation. ATF records revealed that no machineguns were registered to Husain. Based on the previously witnessed deliveries of machineguns by Husain to Abdulhady, the agents obtained a search warrant of Husain's residence and security company. The warrant was executed on April 11, 1996.

Husain's firearms acquisition and disposition books were seized during the search. The agents reviewed the books and discovered that no information with respect to the weapons Husain had delivered to Abdulhady on February 24, 1996, and March 6, 1996 had been recorded. Among other things, the agents seized a booklet explaining how to convert a semi-automatic rifle into an automatic rifle.

After Abdulhady was convicted, he became a cooperating witness against Husain. Abdulhady had purchased numerous weapons from Husain over a four-year period. To purchase weapons, Husain would meet Abdulhady at a designated location and deliver firearms from his vehicle. Abdulhady filled out some of the required forms for Husain; however, he used incorrect names and addresses.

Husain told Abdulhady that he had a friend who knew how to convert the semi-automatic rifles to automatic weapons. Husain also instructed Abdulhady regarding how to switch the wood stocks in the firearms to plastic.

After Abdulhady's arrest, Husain counseled Abdulhady with respect to what he should tell the investigators. Specifically, Husain instructed Abdulhady to assert that the weapons were

4

defective.

Ray Morgan was a witness against Husain at trial. Morgan also was a licensed firearms dealer. Morgan testified that Husain bought twelve Norinco rifles from him. Morgan recalled that Husain had literature illustrating the conversion of semi-automatic AK-47s to machineguns. Morgan testified that he saw Husain in possession of two machineguns on one occasion and six on another.

Morgan and Husain test-fired weapons on property owned by Morgan. Morgan fired some of Husain's machineguns. Some of them were "slam firing" in that "they would take a round into the chamber and then continue firing until the clip was empty even after the operator took his finger off the trigger."

ATF Agent Cooney testified that all of the weapons seized during the course of the investigation had been converted to fully automatic weapons. The firearms had been "modified by removing metal from the bottom of the hammer and removing the disconnector part internal to the weapon." Husain testified in his own behalf.

On the first day of trial, Husain pleaded guilty to the misdemeanor charge of failure to keep proper firearms records. Ultimately, the jury convicted Husain of two counts of unlawful possession of machineguns and two counts of unlawful transfer of machineguns and one count of tampering with a witness. The district court sentenced Husain to a total term of 71 months of imprisonment, all sentences to be served concurrently.

II. Analysis

5

A.    SUFFICIENCY OF EVIDENCE, COUNTS 3 & 4

We review challenges to the sufficiency of the evidence to determine whether a rational trier of fact could have found that the Government proved the essential elements of the offense charged beyond a reasonable doubt.  *United States v. Jimenez,* 77 F.3d 95, 97 (5th Cir. 1996).  All the evidence admitted at the trial must be viewed in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences that tend to support the verdict.  *Id.*

Title 26 U.S.C. § 5845(b) defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a *single function of the trigger*."  (emphasis added). Husain argues that his convictions on counts 3 and 4 of the indictment (possession and transfer of five machineguns) were not supported by the evidence because it was never established that these guns would fire automatically by a single function of the trigger.

Relying on the testimony of ATF Agent Cooney, Husain argues that the guns in question do not fall within the above-quoted statutory definition of machineguns.  Specifically, Husain points out that Agent Cooney testified that when he test-fired the five guns in question, they would fire when the bolt was released and

went forward, *without* the trigger having been touched.[1]

In support of his argument, Husain quotes the following language from a footnote in *Staples v. United States,* 114 S.Ct. 1793, 1795 n.1 (1994): "That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted. Such weapons are 'machineguns' within the meaning of the Act." The evidence is insufficient to prove that the guns were machineguns, Husain argues, because there is no evidence that the guns would fire "by a single function of the trigger." Therefore, the evidence is insufficient to sustain his convictions for the possession and transfer of five machineguns.

At trial, Agent Cooney testified that the guns "are machine guns under the federal definition. They shoot automatically more than one shot without manual loading by a single function of the trigger." Agent Cooney further testified that the weapons had been "intentionally modified" to permit automatic fire.

In our opinion, Husain's argument, although perhaps clever, proves too much. Husain essentially argues that his machineguns fired more automatically than the statute requires. In any event, as previously set forth, the agent expressly testified that the machineguns he test-fired would "shoot automatically more than one

---

[1]  The witness testified that the gun began firing "before I could get my finger down to the trigger."

shot without manual loading by a single function of the trigger." The jury was free to credit Agent Cooney's testimony as it saw fit. *See United States v. Leahy,* 82 F.3d 624, 634 n.12 (5th Cir. 1996). A rational trier of fact could have found that the government proved the essential elements of the offense charged beyond a reasonable doubt.

B.   DOUBLE JEOPARDY

Husain contends that his Fifth Amendment right to be free from double jeopardy was violated by his convictions for both possessing *and* transferring the same machineguns pursuant to 18 U.S.C. § 922(o).   In pertinent part, § 922(o) provides that "it shall be unlawful for any person to transfer or possess a machinegun." Husain argues that the transfer counts "necessarily included conduct consisting of possession."

Generally, counts of an indictment are multiplicitous if a single offense is charged under more than one count of an indictment.  *United States v. Lankford,* 196 F.3d 563, 577 (5th Cir. 1999).  "Multiplicity of an indictment must be raised as a defense pursuant to Fed.R.Crim.P. 12(b) to be preserved for appeal." *United States v. Stovall,* 825 F.2d 817, 821 (5th Cir. 1987) (citations omitted).

In the body of his brief, Husain initially states that a double jeopardy claim raised for the first time on appeal is reviewed for plain error.  In a footnote, however, he provides that

8

he objected to the possession and transfer counts in the indictment as duplicitous and multiplicitous. As such, he states that such an objection was arguably sufficient to apprise the district court of his double jeopardy claim.

In his motion to dismiss the indictment, Husain asserted that "[t]he allegations of possession in Count one and transferring in Count two are duplicious and multiplicious with respect to the allegations of possession in Count three and transferring in Count four of the indictment." That is the entire argument, *i.e.,* the possession and transfer counts of February 1996 are duplicitous and multiplicitous with respect to the possession and transfer counts of March 1996. This objection clearly is without merit because (1) the February possession count related to a separate machinegun from the five machineguns alleged to be possessed in March; and likewise, the February transfer count related to a machinegun separate from those alleged to have been transferred in March. We do not read Husain's objection before the district court to state the same argument he now makes (that the possession counts are duplicitous or multiplicitous with respect to the transfer counts). We believe his objection failed to sufficiently apprise the district court of the specific argument Husain makes before us. Having failed to properly preserve this issue (or show cause for failing to do so), he may not now challenge his convictions as multiplicitous. *See United States v. Soape,* 169 F.3d 257, 266 &

9

n.3 (5th Cir. 1999) (recognizing that this Court has consistently declined to review this argument for plain error).

Husain also argues that his *sentences* for both the transfer and the possession counts constitute multiple punishments in violation of the double jeopardy clause. To determine whether Congress intended to allow multiple punishments for possessing and transferring the same machineguns in violation of § 922(o), we apply the test announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180 (1932). "[D]ouble jeopardy is not implicated if each offense at issue involves proof of at least one element not required of the other." *United States v. Palella,* 846 F.2d 977, 982 (5th Cir. 1988).

Although Husain did not make this particular objection in the district court, a complaint with respect to the multiplicity of sentences may be raised for the first time on appeal. *See Lankford,* 196 F.3d at 577. Thus, unlike his multiplicity challenge to the counts of conviction, we may review his claim of multiple sentences for plain error. *Id.*[2]

To establish plain error, a defendant must show the following:

---

[2] Although the district court ordered all Husain's sentences to be served concurrently, the record indicates (and the government does not dispute) that the court imposed monetary assessments on each of the separate counts of conviction. Under those circumstances, we have held that a defendant is not precluded from raising the claim of multiplicity of sentences for the first time on appeal. *See United States v. Galvan,* 949 F.2d 777, 781 (5th Cir. 1991).

"(1) an error; (2) that is clear or plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Meshack,* 225 F.3d 556, 575 (5th Cir. 2000) (citation and internal quotation marks omitted).

Husain argues that his sentences for both transferring and possessing the same machineguns under § 922(o) violate the double jeopardy clause because the term "transfer" necessarily includes "possession." For purposes of the firearms chapter, Congress defined "transfer" as including "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of." 26 U.S.C. § 5485(j). In the context of illegal possession of firearms, we have recognized that possession may be either actual or constructive. *United States v. Smith,* 930 F.2d 1081, 1085 (5th Cir. 1991). "'Constructive possession'" has been defined as ownership, dominion, or control over the contraband itself, *or* dominion or control over the premises in which the contraband is concealed." *Id.* at 1085 (emphasis in opinion).[3]

Although it is clear that transfer of a machinegun involves proof of an element not required for the offense of possession of a machinegun, it is certainly arguable that the converse is not

---

[3] In the context of a drug offense, we have looked to the following dictionary definition of "possess"--"'to instate as an owner . . . to have and hold as property.'" *United States v. Morgan,* 117 F.3d 849, 857 n.7(5th Cir. 1997) (quoting Webster's Ninth New Collegiate Dictionary 718 (1984)).

11

true.  *Cf. Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673 (1985) (holding that although the government may obtain an indictment based on a single act that charges a felon with both receiving and possessing the same weapon, a defendant could not suffer two convictions or sentences for those offenses).  Indeed, the government admits that "it is necessary for Husain to possess the firearms in order to transfer them," which arguably constitutes a concession that the offenses do not pass the *Blockburger* test. Nonetheless, we are mindful that Husain must show that the error was "plain or obvious."  *United States v. Rios-Quintero,* 204 F.3d 214, 219 (5th Cir. 2000).  After much research, we have been unable to find any definitive authority addressing whether transferring and possessing under § 922(o) constitute separate offenses under *Blockburger*.[4]  We cannot conclude that the error was plain.

Assuming *arguendo* that the error was plain, as set forth previously, such error must also affect the defendant's substantial

---

[4]    We have recognized that the *Blockburger* test is a rule of statutory construction and is not controlling if Congress has indicated a contrary intent--the intent to impose cumulative punishments.  *See United States v. York,* 888 F.2d 1050, 1058 (5th Cir. 1989).  Of course, Husain's convictions for possessing and transferring are violations of the *same* subsection of a statute. As set forth previously, § 922(o) provides that "it shall be unlawful for any person to transfer or possess a machinegun."  The structure of § 922(o) does not indicate to us that Congress intended to separately or cumulatively punish both transferring and possessing the same machineguns.  Additionally, the punishment for transferring or possessing under § 922(o) is identical.  *See* § 924(a)(2) (providing that anyone who knowingly violates § 922(o) "shall be fined as provided in this title, imprisoned not more than 10 years, or both").

rights. In *Meshack,* we stated that the third prong of the plain error test generally requires a defendant to show prejudice. 225 F.3d at 577. Prejudice may be shown in the context of a sentencing challenge if the error resulted in a longer sentence. *Id.* In that case, we opined that Meshack arguably could not show a violation of his substantial rights because he had a lengthier, concurrent sentence that was not challenged. *See id.* We further opined that even assuming his substantial rights were violated, we we would not exercise our discretion to correct the error because it did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See id.* More specifically, we concluded that the fourth prong of the plain error test was not met because the defendant could "show no meaningful benefit he would receive from vacating this sentence." *Id.*

Similarly, in the instant case, again assuming Husain has shown plain error, it does not appear that he has shown that his substantial rights were violated in light of the fact that the district court sentenced him to a term of seventy-one months on each of the five separate felony convictions–all to run concurrently.[5] Moreover, assuming Husain has shown that his substantial rights were violated, as in *Meshack,* we decline to exercise our discretion because he has failed to show that vacating

_____

[5] The district court also sentenced Husain to a concurrent twelve-month sentence with respect to his misdemeanor conviction for failure to keep proper firearms records.

13

two of his five, concurrent 71-month sentences would result in a meaningful benefit to him. As such, we conclude that this claim entitles Husain to no relief.

C.   SUFFICIENCY OF EVIDENCE–WITNESS TAMPERING

Husain argues that the evidence is insufficient to sustain his conviction for witness tampering in violation of 18 U.S.C. § 1512(b)(3), which provides that:

> (b) Whoever knowingly uses intimidation or physical force, threatens, *or corruptly persuades another person, or attempts to do so,* or engages in misleading conduct toward another person, with intent to--
>
>> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
>
> shall be fined under this title or imprisoned not more than ten years, or both.

(emphasis added).[6]

---

[6]   The district court instructed the jury as follows:

> For you to find the defendant guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:
>
> First: That the defendant corruptly persuaded or attempted to corruptly persuade the person named in the indictment as a witness;
>
> Second: That the defendant acted with the intent to prevent the communication to a law enforcement

14

Husain argues that there is no evidence that Morgan was a witness in this case at the time of the offense of witness tampering. This argument offers Husain no succor. As set forth above, the statute prohibits, among other things, "corruptly persuad[ing] another *person*"--it does not use the term "witness." § 1512(b) (emphasis added). Also, the statute provides that "an official proceeding need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(e)(1). In light of the fact that a proceeding need not be instituted at the time of the offense, it would be illogical to infer a requirement that there be evidence that the person was a witness at the time of the offense.

Husain next contends that the "evidence merely revealed that [he] contacted Ray Morgan and asked him not to say anything to the ATF about his involvement with machineguns." There was no proof of threats, force, bribery, extortion or other means of corrupt persuasion evidencing his intent to obstruct or interfere with the administration of justice.

In its charge, the district court provided the following definition: "To act `corruptly,' as that word has been used in these instructions, means that the government must prove that the

---

officer or judge of the United States; and

Third: That such information related to the commission or possible commission of a federal offense.

15

defendant's attempts to persuade were motivated by an improper purpose. It also means to act deliberately for the purpose of improperly influencing, or obstructing, or interfering with the administration of justice." Husain does not take issue with this instruction on appeal.

At Husain's trial, Ray Morgan testified that in September of 1998, ATF Agent Kirk Tinker interviewed him regarding firearms and his relationship with Husain. Later that same day, Husain placed a telephone call to Morgan. Prior to this phone call, it had been approximately a year since he had contact with Husain. During this phone conversation, it became apparent that Husain was under the impression that the ATF had no evidence against him. Husain instructed Morgan "not to say anything about his involvement" with machineguns. Husain also informed Morgan that he had told the ATF that the firearms in question were defective. After Morgan informed Husain that he would not discuss the matter with him, Morgan hung up the phone. Husain called again and reurged Morgan "not to say anything." Morgan terminated the call and paged Agent Tinker. Husain called yet a third time but Morgan's wife told Husain that Morgan was not at home.

As the government asserts, the jury had before it evidence that Morgan knew of Husain's possession of machineguns and that Husain knew of an investigation as early as April 11, 1996, when his home was searched and firearms records were seized. The only topic Husain broached during the phone call with Morgan in 1998 was

16

his possession and handling of machineguns.  The evidence proves that Husain instructed Morgan not to relate information with respect to his offense conduct to ATF Agent Tinker.  Moreover, Husain informed Morgan that he had told the ATF that the firearms were defective when he received them.  When viewed in the light most favorable to the government, a reasonable jury could believe that Husain was attempting to corruptly persuade Morgan to corroborate his story that the guns were defective.  Although the evidence is not overwhelming, we believe it is sufficient to show that Husain attempted to corruptly persuade Morgan within the definition given by the district court (*i.e.,* to act deliberately for the purpose of improperly influencing, or obstructing, or interfering with the administration of justice). *Cf. United States v. Pofahl,* 990 F.2d 1456, 1481-82 (5th Cir. 1993) (in the context of determining whether a wife's letter to her husband urging him not to continue to cooperate with authorities constituted obstruction of justice under U.S.S.G. § 3C1.1, this Court opined that the wife's letter appeared to be prohibited by § 1512(b)).[7]

D.   ADMISSION OF EVIDENCE OF PRIOR BAD ACTS

Husain next argues that the district court erred in allowing evidence that he had sold firearms to Abdulhady on prior occasions

---

[7]  The commentary to U.S.S.G. § 3C1.1 provides as an example of conduct which warrants an enhancement for obstruction of justice "conduct prohibited by 18 U.S.C. §§ 1501-1516." U.S.S.G. § 3C1.1, comment. (n.3(I)).

17

and that Ray Morgan previously had observed him in possession of machineguns.  We review this evidentiary ruling for abuse of discretion.  *See United States v. Richards,* 204 F.3d 177, 196-99 (5th Cir. 2000).

The government responds that the evidence was relevant in that it demonstrated Husain's knowledge and his intent to transfer machineguns as well as his reasons for failing to maintain proper records.  Even assuming for purposes of this appeal that the admission of the evidence was error, we are convinced that any error was harmless because (1) the evidence of guilt is overwhelming with respect to the convictions for possessing and transferring the machineguns, and (2) the district court did charge the jury that Husain was not on trial for any act, conduct, or offense not charged in the indictment. *See Richards,* 204 F.3d at 203 (explaining that the erroneous admission of evidence requires reversal only if the evidence had a substantial impact on the verdict).  Husain is not entitled to relief on this claim.

E.   FAILURE TO INSTRUCT

Husain contends that the district court erred in failing to instruct the jury regarding their consideration of Husain's prior bad acts.  He concedes that he made no objection; therefore, this issue is raised for the first time on appeal and will be reviewed for plain error under Fed.R.Crim.P. 52(b).

Husain asserts that in *United States v. Diaz,* this Court held

18

that a district court committed plain error when it failed to give a similar acts limiting instruction. 585 F.2d 116 (5th Cir. 1978). Husain's reliance on *Diaz* is misplaced. In that case, we determined that the failure of the trial court to *sua sponte* provide a limiting instruction regarding the defendant's *convictions* constituted plain error. Here, the complained of evidence consists of prior unadjudicated acts. *Diaz* therefore is not controlling.

This Court has explained that "failure to give limiting instructions is generally held not to be plain error." *United States v. Parziale,* 947 F.2d 123, 129 (5th Cir. 1991) (footnote and internal quotation marks omitted). In *Parziale,* a case involving the admission of prior bad acts, we concluded that there was no plain error because the trial court had instructed the jury on the burden of proof, explained the essential elements of each count, and had emphasized that the "defendant is not on trial for any act or conduct or offense not alleged in the indictment." *Id.*

Likewise, in the instant case, the district court provided Husain's jury with instructions very similar to those in *Parziale*.[8] Husain therefore has not demonstrated that the district court

---

[8] The district court charged Husain's jury with respect to the burden of proof and the elements of the counts. The court also expressly instructed the jury as follows: "You are here to decide whether the Government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or offense not alleged in the Indictment."

19

committed plain error in failing to provide a limiting instruction with respect to his prior bad acts.

F.    NUMBER OF FIREARMS

Husain next contends that, at sentencing, the district court erred in determining that his conduct involved a total of 27 firearms.  The sentencing guidelines provide that if the offense involves anywhere from 25 to 49 firearms, increase the offense level by 5.  U.S.S.G. § 2K2.1(b)(1)(E).  We review a sentencing judge's application of the guidelines *de novo* and accept findings of fact unless they are clearly erroneous.  *United States v. Rome,* 207 F.3d 251, 253 (5th Cir. 2000).

The district court arrived at the figure of 27 based on the following evidence at trial:

*    in 1993, Ray Morgan allegedly observed Husain with **3** fully automatic firearms

*    in 1994, Husain delivered **6** automatic firearms to Ray Morgan

*    **12** firearms were seized from Husain in connection with his failure to maintain proper records

*    **6** automatic firearms were seized from codefendant Abdulhady as a result of the investigation

Husain objected to this determination in the presentence report (PSR).  Citing the record, he makes the following arguments challenging the factual finding:

> Even if Ray Morgan is believed, there is no evidence that the six firearms, which are the subject of this prosecution, are different

20

from those that were exhibited to Morgan some five years earlier. In fact, it may well be that they were the very same guns that he sold to Husain. Nor is it evident that the three firearms possessed in 1993 were different from those allegedly brought to Morgan's house in 1994. Moreover, Morgan testified that he test-fired only one of the six guns that Husain brought to him, so there is no evidence that the other eight were fully automatic (*i.e.,* machineguns).

If a district court has relied on information in a PSR, the defendant bears the burden of demonstrating that the information is unreliable or untrue. *Rome,* 207 F.3d at 254. If a defendant proffers no rebuttal evidence, the facts contained in the PSR may be adopted without further inquiry so long as there is an adequate evidentiary basis. *Id.*

Here, the district court relied on evidence from the trial and the PSR, *e.g.,* testimony of codefendant Abdulhady and witness Ray Morgan. Such testimony constitutes an adequate evidentiary basis for the district court's determination. Thus, Husain had the burden of rebutting such evidence.

The transcript of the sentencing hearing provides that Husain made the same challenges to the finding of 27 firearms that are quoted above. When Husain objected that the government had not carried its burden of showing that there were actually 27 different firearms, the district court inquired as follows: "Tell me what you have, that [shows] they are different." In response, counsel stated that it was the government's burden to adduce evidence that

21

distinguishes the weapons.

The court overruled Husain's objections, ruling as follows:

> And with respect to speculation about whether or not the firearms that were shown later were duplicates of firearms that were part of the offense conduct related to the crime in this case, the Court finds that a preponderance of the evidence supports the idea that these were separate weapons, given the amount of time between each of the events listed in separately identified paragraphs, and these separately identified events in terms of the weapons that were delivered and were shown to persons who testified in this case, in that the total number of 27 accurately reflects the number of weapons that were involved in this case and that were supported by the preponderance of the evidence in this case.

Husain argued before the district court (and now) that the government had the burden of showing that there were 27 firearms. He is correct to the extent that the government had the initial burden of making such a showing. However, as set forth previously, once the district court made a finding based on an adequate evidentiary basis, it became Husain's burden to come forth and rebut it. The sentencing transcript indicates he failed to do so because he relied on his mistaken belief that the government had failed to shoulder its burden. Husain has not shown that the district court clearly erred in crediting the testimony and concluding that there were 27 firearms.

H. ACCEPTANCE OF RESPONSIBILITY

Husain argues that the district court erred in denying him a reduction in his offense level for acceptance of responsibility.

22

We have reviewed a district court's refusal to credit acceptance of responsibility under three different (at least semantically) standards: clear error, without foundation, and with great deference. *See United States v. Siebe,* 58 F.3d 161, 163 (5th Cir. 1995). There appears to be no practical difference among them, however. *Id.* In any event, the sentencing guidelines provide that the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *Id.;* U.S.S.G. § 3E1.1 (commentary).

Husain points to the fact that at the conclusion of the first day of trial, he pleaded guilty to count five, which alleged failure to keep proper records with respect to the firearms. Of course, this ignores the fact that he put the government to its burden of proof on the remaining counts of the indictment. Although the "fact that a defendant may exercise his right to a trial by jury is not a reason for denying the two points, . . . the fact that a defendant has never admitted to violating the law is sufficient reason." *Siebe,* 58 F.3d at 163. In his brief before this Court, he argues that there was insufficient evidence to sustain his convictions for possessing and transferring machineguns. Such an argument indicates that he has not accepted responsibility for the offense conduct. *See United States v. Becerra,* 155 F.3d 740, 758 (5th Cir. 1998)(indicating that defendant was not entitled to reduction for acceptance of

23

responsibility, despite whatever assistance he may have provided to government pre- and post-trial, inasmuch as defendant's counsel contended in closing argument that defendant was innocent and defendant challenged sufficiency of evidence on direct appeal).

The probation officer noted in the addendum to the PSR that Husain had yet to accept responsibility for the charged offenses, and the district court adopted the factual findings in the PSR. Moreover, the district court expressly found that Husain committed obstruction of justice.  Husain has not shown that this is one of those "extraordinary cases" in which adjustments for both obstruction of justice under  U.S.S.G. § 3C1.1 and acceptance of responsibility under U.S.S.G. § 3E1.1 would be appropriate.  *See United States v. Rodriguez*, 942 F.2d 899, 903 (5th Cir. 1991). Under these circumstances, Husain, who had the burden of establishing that he was entitled to the reduction, has not demonstrated that the district court erred in denying him a reduction for acceptance of responsibility.

G.   Whether Additional Firearms Affected Offense Level

Finally, Husain asserts that the district court erroneously sustained the following objection by the government at sentencing: "The United States objects to the failure of the report to reflect the additional machine guns that were testified about as having been exchanged between the defendant and [codefendant Abdulhady]." The Court then responded that it:

believe[d] that the United States is right on that issue in that those additional firearms should have been included in the count, but even adding 18 to that 27, that still brings it to a total of [45], which doesn't change the number of points that would be attributable to that number of firearms under [the guideline], since he was already above 25 and Subsection E is 25 to 49, which adds five points to the offense level, he's still within that same range, so it doesn't have any ultimate impact on the offense level, but it is information that I believe should have been properly included within the report.

As set forth previously, the guideline in question provides that if the offense involved between 25 and 49 firearms, increase the offense level by 5. *See* U.S.S.G. § 2K2.1(b)(1)(E). The PSR provided that there were 27 firearms involved and the government objected, arguing that the evidence demonstrated that an additional 18 firearms were involved. As quoted above, Judge Gilmore sustained the objection, but noted that adding 18 firearms would bring the amount to 45, which does not affect the offense level.

As previously determined, Husain has not shown the district court clearly erred in finding that 27 firearms were involved. Accordingly, because 18 additional firearms makes no difference in his offense level, any error would be harmless. *See United States v. Ramos,* 71 F.3d 1150, 1158 n.27 (5th Cir. 1995) (explaining that any error with respect to increase in offense level for possession of firearms would be harmless because the guideline range remained

the same).[9]

For the above reasons, the district court's judgment is AFFIRMED.

---

[9]  We also reject Husain's argument that the district court erred in denying his motion for new trial without a hearing.  We conclude that the district court did not abuse her considerable discretion for the following reasons: (1) the "newly discovered evidence" of a memo was not material; (2) an apparent lack of due diligence with respect to obtaining C.E. Anderson's report; and (3) the impeachment evidence probably would not have produced an acquittal.  *See United States v. Sullivan,* 112 F.3d 180, 183 (5th Cir. 1997) (discussing standard for review of motion for new trial).