# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 6, 2009

Charles R. Fulbruge III
Clerk

No. 05-41424

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SALVADOR GARCIA, JR.; JORGE ROLANDO GARCIA, SR.; TORIBIO
ARRIAGA-GUERRERO,

Defendants-Appellants

Appeals from the United States District Court
for the Southern District of Texas, McAllen Division

Before GARZA and ELROD, Circuit Judges, and HICKS,[*] District Judge.
JENNIFER W. ELROD, Circuit Judge:

A jury in the United States District Court for the Southern District of
Texas convicted Salvador Garcia, Jr., Jorge Rolando Garcia, Sr., and Toribio
Arriaga-Guerrero of multiple charges related to a drug-trafficking operation.
The defendants appeal their convictions by challenging various district court
rulings. We find no merit in the defendants' appeals and affirm the convictions
on all counts.

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

# I. BACKGROUND

*A.    Facts*

"We recite the facts in the light most favorable to the verdict." *United States v. Olis*, 429 F.3d 540, 541 n.1 (5th Cir. 2005).  In Rio Grande City, Texas, Salvador Garcia owned and controlled property on Midway Street that bordered the Rio Grande River.  Salvador Garcia directed a drug trafficking operation that brought marijuana and cocaine across the Rio Grande river and into the United States through vehicle paths on his Midway property.  In a typical instance, Salvador Garcia would approve a day's trafficking operation and Juan Garcia, Salvador Garcia's nephew, would direct the operation's specific conduct.  Jorge Garcia, Salvador Garcia's brother and Juan Garcia's father, participated in the operation by providing an interim storage location for drugs at his home on Agua Verde Road.  Toribio Arriaga-Guerrero participated in several capacities, sometimes assisting with the actual transportation of the drugs, and other times serving as a lookout for law enforcement agents.  Several other persons participated in the operation at various times.  Over the course of several months in 2003, the operation trafficked large amounts of both marijuana and cocaine on an almost daily basis.

On the morning of November 30, 2003, Salvador Garcia, Juan Garcia, Arriaga-Guerrero, and other participants planned to acquire and transport a large quantity of marijuana. Arriaga-Guerrero, who had left the operation some time during the preceding few weeks, informed Juan Garcia of his desire to return and asked for a role in that day's operation.  Although Salvador Garcia opposed Arriaga-Guerrero's continued participation, Juan Garcia allowed it, and instructed Arriaga-Guerrero to serve as the operation's lookout at a nearby gas

station. Arriaga-Guerrero agreed. Juan Garcia and two other participants drove a GMC Yukon to the river landing near the Midway property, loaded several hundred pounds of marijuana into the vehicle, and headed back to the Midway property where the group sometimes stored vehicles in sheds.

Meanwhile, ground sensors alerted United States Border Patrol agents to activity near the river landing. Two agents went to the river landing, discovered evidence of recent activity, and began following tire tracks towards the Midway property. Juan Garcia received warning of the approaching government agents, and left the other two members of the operation at the Midway property to tend to the load of marijuana. As immigration agents neared the Midway property compound and observed persons fleeing the vehicles, one of the agents saw two bundles of what the agent believed to be marijuana fall out of the Yukon. The agents' search of the Yukon, the other vehicles on the property, and the buildings there yielded 759 kilograms of marijuana, several firearms, and accompanying ammunition.

On December 2, 2003, officers conducting an unrelated investigation came upon Jorge Garcia's Agua Verde property, which emanated a strong odor of marijuana. After obtaining a warrant, the officers searched the home and seized 3,470 kilograms of marijuana, as well as another firearm and ammunition. One person testified that he saw Jorge Garcia flee the Agua Verde property near the time of the seizure.

*B. District Court Proceedings*

In this case's first trial, the government charged Salvador Garcia and Arriaga-Guerrero with the following:

(1) Conspiracy to possess more than 1,000 kilograms of marijuana with intent to distribute from October through December 2, 2003, *see* 21 U.S.C. §§ 846, 841(a)(1), and

(2) Possession of approximately 759 kilograms of marijuana with intent to distribute on November 30, 2003, *see* § 841(a)(1).

The government also charged Salvador Garcia with the following:

(3) Maintaining drug-involved premises, *see* 21 U.S.C. § 856,

(4) Possession of firearms in furtherance of a crime, *see* 18 U.S.C. § 924(c)(1)(A), and

(5)–(26) Twenty-two counts of violating financial reporting requirements, *see* 31 U.S.C. § 5324(a).

Salvador Garcia and Arriaga-Guerrero presented motions for acquittal on all counts at the end of the government's case-in-chief, and again before the district court charged the jury; the district court denied the motions. The jury failed to return a verdict on Counts One through Four, and the district court declared a mistrial as to those counts.[1]

For the second trial, the government's superceding indictment charged Salvador Garcia, Arriaga-Guerrero, and Jorge Garcia with identical versions of the first trial's Count One conspiracy and Count Two possession charge. The indictment also charged Salvador Garcia with identical versions of the Count

---

[1] The first jury found Salvador Garcia guilty on Counts Five through Twenty-Six, and Salvador Garcia does not appeal that portion of the verdict.

Three drug-involved premises and Count Four firearm charges. New Count Five charged Salvador Garcia and Jorge Garcia with possession of more than 1000 kilograms of marijuana with intent to distribute on December 2, 2003. *See* 21 U.S.C. §§ 846, 841(a)(1). The jury found Salvador Garcia guilty of all but the firearms charge, and the district court sentenced him to a 365-month term of imprisonment. The jury found Arriaga-Guerrero guilty of the conspiracy and possession charges, and the district court sentenced him to a 240-month term of imprisonment. The jury found Jorge Garcia guilty of the conspiracy and possession charges, and the district court sentenced him to a 235-month term of imprisonment.

All three defendants appealed. We have jurisdiction over these appeals from final judgments. *See* 28 U.S.C. § 1291. We consolidated the appeals for purposes of argument and we now consolidate them for disposition. *See* Fed. R. App. P. 3(b)(2); *United States v. Rabanal*, 508 F.3d 741, 742 (5th Cir. 2007).

## II. DISCUSSION

*A.     Salvador Garcia*

### 1.     Rule 404(b)

In his first issue, Salvador Garcia challenges his convictions on all counts by arguing that the district court violated Federal Rule of Evidence 404(b) when it admitted evidence of cocaine trafficking and cocaine use. During the course of the four-day trial on the marijuana charges, the district court admitted evidence showing that Salvador Garcia's operation moved cocaine through the Midway property using the same vehicles and the same passageway, that the conspirators packaged the cocaine in bags of horse feed, and that Salvador Garcia took cocaine to McAllen, Texas. The district court also admitted evidence

showing that Salvador Garcia gave members of the operation cocaine as payment for their work, and that the members consumed cocaine for the purpose of staying awake during the marijuana and cocaine trafficking operations. According to Salvador Garcia, the district court should have excluded the evidence under Rule 404(b) because the government failed to give Salvador Garcia notice of its introduction, and because the evidence's probative value did not outweigh its unfair prejudice.

Because Salvador Garcia failed to object when the government introduced the evidence,[2] we review the district court's decisions for plain error only. *See United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005); *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).

> An appellate court may not correct an error the defendant failed to raise in the district court unless there is "(1) error, (2) that is plain, and (3) that affects substantial rights." "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*Mares*, 402 F.3d at 520 (citation omitted) (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)). Salvador Garcia's lack-of-notice argument fails because even if the government provided insufficient notice of its intent to introduce the

---

[2] Salvador Garcia concedes that he failed to object to the cocaine testimony, and also that he failed to ask for a limiting instruction. His inclusion of the Rule 404(b) argument in his motion for new trial does not change the standard of review. *See United States v. Abroms*, 947 F.2d 1241, 1249 n.6 (5th Cir. 1991) (applying plain error review to an evidentiary argument raised only in a motion for new trial). Before Juan Garcia testified to the cocaine trafficking and cocaine use, the government notified the court of its intention to introduce the evidence, and the court accepted the evidence as proof of the defendants' knowledge. Had Salvador Garcia objected, the district court could have made an on-the-record ruling in accordance with *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc). *See United States v. Greenwood*, 974 F.2d 1449, 1462 & n.8 (5th Cir. 1992).

cocaine evidence, Salvador Garcia failed to satisfy *his* burden of demonstrating the requisite prejudice. *See Mares*, 402 F.3d at 520*; United States v. Duffaut*, 314 F.3d 203, 209 (5th Cir. 2002) ("To demonstrate plain error, *an appellant* must show clear or obvious error that affects his substantial rights. . . ." (emphasis added)); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial."); *Puckett v. United States*, No. 07–9712, slip op. at 13 (U.S. Mar. 25, 2009) ("Eliminating the third plain-error prong through semantics makes a nullity of *Olano*'s instruction that a defendant normally 'must make a specific showing of prejudice' in order to obtain relief."). Although Salvador Garcia's substantive 404(b) argument—that the cocaine evidence's probative value did not outweigh its unfair prejudice—is more complicated, it too fails to merit reversal.

Rule 404(b) limits the admissibility of extrinsic evidence, but not intrinsic evidence. *E.g.*, *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). "Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged." *Id.* If evidence is extrinsic, Rule 404(b) and *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), require that courts first determine "that the extrinsic evidence is relevant to an issue other than the defendant's character, *i.e.*, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003). "Second 'the

evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.'" *Id.* (quoting *United States v. Anderson*, 933 F.2d 1261, 1269 (5th Cir. 1991)).

We need not decide whether the cocaine evidence triggered Rule 404(b) because we can identify no plain error in the district court's implied *Beechum* analysis. *See United States v. Nguyen*, 504 F.3d 561, 574 (5th Cir. 2007). The task of balancing probative value against unfair prejudice requires that courts examine a number of highly fact-dependent circumstances, including the similarity between the extrinsic acts and charged offenses, the violence involved, the relative magnitude of the acts, the time devoted to the evidence, and the extent to which the matter proved by the other-act evidence has already been established. *See, e.g.*, *United States v. Hernandez-Guevara*, 162 F.3d 863, 872 (5th Cir. 1998); *United States v. Emery*, 682 F.2d 493, 499–500 (5th Cir. 1982) ("The application of *Beechum* to the facts of any case requires a commonsense assessment of all the circumstances surrounding the extrinsic offense.").

To be sure, the introduction of cocaine evidence into a marijuana trial carries inherent prejudice, but the question Rule 403 poses is whether the cocaine evidence's *unfair* prejudice *substantially* outweighs its relevance. Here, the cocaine evidence introduced at trial was relevant to issues of intent and knowledge, among others. *See Nguyen*, 504 F.3d at 574; *United States v. Parziale*, 947 F.2d 123, 128–29 (5th Cir. 1991). Juan Garcia's testimony occupied approximately 170 pages of the record, and the most significant portions of the cocaine testimony occupied less than 10 pages. He explained that the cocaine and marijuana trafficking occurred on Salvador Garcia's Midway property during the same period of time, engaged almost identical methods of

acquisition, transport, storage, and distribution, and involved similar participants. He also explained the method by which the operation packaged cocaine on Salvador Garcia's Midway property, and that the members of the operation used cocaine to stay awake while participating in trafficking operations. Two other members of the operation testified for a much shorter total period, and provided a similarly detailed explanation of the cocaine packaging and transportation activities. Because "Rule 404(b) evidence is particularly probative where the government has charged conspiracy," *United States v. Gordon*, 780 F.2d 1165, 1174 (5th Cir. 1986), and because several considerations militated in favor of admitting this cocaine evidence—namely, the high degree of similarity and the dominance of non-cocaine evidence in this case—we cannot conclude that the district court committed plain error when it decided to admit the cocaine evidence in spite of its inherent prejudice. *See Emery*, 682 F.2d at 500–01; *Beechum*, 582 F.2d at 910 ("Where . . . the extrinsic offense evidence is relevant to an issue such as intent, it may well be that the evidence has probative force that is not substantially outweighed by its inherent prejudice.").[3]

As an extension of his Rule 404(b) argument, Salvador Garcia argues that despite his failure to object or tender any alternative, the district court erred when it failed to *sua sponte* provide a specific instruction concerning the limits

---

[3] For almost identical reasons, Salvador Garcia's conclusory assertion that the district court's admission of the cocaine evidence violated the Fifth Amendment is without merit. *See Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991) ("An extraneous offense may be admitted into evidence without violating the due process clause if the government makes a 'strong showing that the defendant committed the offense' and if the extraneous offense is 'rationally connected with the offense charged.'" (quoting *Enriquez v. Procunier*, 752 F.2d 111, 115 (5th Cir. 1984))).

of the Rule 404(b) cocaine evidence. Because Salvador Garcia failed to object at trial and request the instruction he now seeks, we review the content of the district court's jury instruction for plain error only. *See United States v. Delgado*, 401 F.3d 290, 299 (5th Cir. 2005). "Plain error occurs only when the instruction, considered as a whole, was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice." *United States v. Davis*, 19 F.3d 166, 169 (5th Cir. 1994); *see also Parziale*, 947 F.2d at 129 ("Furthermore, 'failure to give limiting instructions is generally held not to be plain error.'" (quoting *United States v. Bermudez*, 526 F.2d 89, 97 (2d Cir. 1975))). This standard of review is predicated, in part, on our realization that district courts cannot be expected to foresee all potential sources of evidentiary confusion and controversy, and are not required to issue panoptic sets of preventive instructions. For trials to function effectively, parties themselves must play an active role in creating the jury charge; the inclusion of Rule 404(b) instructions is no exception.

Salvador Garcia's argument fails because the district court's instructions sufficiently mitigated the risk that prejudice resulting from the cocaine evidence would affect the verdict. In addition to instructions on the elements of the offenses, the district court's instructions included the following admonishment under the heading "CAUTION—CONSIDER ONLY CRIMES CHARGED": "The defendant is not on trial for any act, conduct, or offense not alleged in the indictment."[4] In *Parziale*, 947 F.2d 123, the district court admitted Rule 404(b) evidence and its charge gave the essential elements of each count with an almost

---

[4] The jury charge also included one instruction that outlined the purposes for which the jury could use Rule 404(b) evidence, but that instruction addressed only evidence of Arriaga-Guerrero's acts.

10

identical additional instruction: "[T]he defendant is not on trial for any act or conduct or offense not alleged in the indictment." *Id.* at 129. As we did in *Parziale*, *id.*, we conclude in this case that the district court's instructions sufficiently guarded against the risk of unfair prejudice to the defendant. Accordingly, the district court's decision to admit the evidence of cocaine trafficking and cocaine use was not reversible error.

2.      Ineffective Assistance of Counsel

In his second issue, Salvador Garcia argues that his attorney rendered ineffective assistance of counsel by failing to object to the cocaine evidence, and by failing to mitigate the effects of the cocaine evidence. Our standards for evaluating claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), are well established:

> First, [a defendant] must demonstrate that his attorney's performance fell below an objective standard of reasonableness. This court has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." Second, [a defendant] must also prove that he was prejudiced by his attorney's substandard performance. "[T]o prove prejudice, [a defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (footnotes omitted) (quoting *United States v. Conley*, 349 F.3d 837,841 (5th Cir. 2003)). However, we do not reach Salvador Garcia's *Strickland* challenge because it is premature.

> [T]he "general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no

opportunity existed to develop the record on the merits of the allegations." Only in those rare occasions where the record is sufficiently developed will the court undertake to consider claims of inadequate representation on direct appeal. If we cannot fairly evaluate the claim from the record, we must decline to consider the issue without prejudice to a defendant's right to raise it in a subsequent proceeding.

*United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008) (citations omitted) (quoting *United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir. 1987)). This case falls within that general rule because the record reveals neither the reasons for Salvador Garcia's attorney's decisions nor the availability of alternative strategies. *See United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (refusing to hear a *Strickland* claim because "the district court did not hold a hearing and the record does not provide sufficient detail about trial counsel's conduct and motivations"); *United States v. Garcia-Jasso*, 472 F.3d 239, 245 (5th Cir. 2006) (refusing to hear a *Strickland* claim because "the reasons for [the attorney's] decisions and any plausible alternative strategies available to him are unclear"); *United States v. Gordon*, 346 F.3d 135, 137 (5th Cir. 2003) (refusing to hear a *Strickland* claim because "[t]he record has not been developed with regard to counsel's motivation for his trial tactics"). While Salvador Garcia may raise this argument in a later proceeding, *see United States v. Villegas-Rodriguez*, 171 F.3d 224, 230 (5th Cir. 1999) ("Normally, the appropriate mechanism for raising this claim would be a habeas corpus proceeding pursuant to 28 U.S.C. § 2255."), it is not a ground for reversal in this appeal.

B.    *Toribio Arriaga-Guerrero*

        1.    Double Jeopardy

In his first issue, Arriaga-Guerrero challenges his convictions on both counts by arguing that the district court erred when it denied his motion for a judgment of acquittal in the second trial. Specifically, Arriaga-Guerrero argues that the first trial's evidence was insufficient to support a verdict on either charge, and that the first trial's insufficiencies triggered Double Jeopardy Clause protections prohibiting his reprosecution in the second trial. Because Arriaga-Guerrero did not raise this argument in the district court, we review only for plain error. *See, e.g.*, *United States v. Odutayo*, 406 F.3d 386, 392 (5th Cir. 2005).

Arriaga-Guerrero's Double Jeopardy Clause argument fails because the government placed him in jeopardy only once. In the successive prosecution context, the authorities hold that a defendant's double jeopardy concerns arise only after original jeopardy attaches *and* terminates. *Richardson v. United States*, 468 U.S. 317, 325 (1984). No matter the sufficiency of the evidence, "the failure of the jury to reach a verdict is not an event which terminates jeopardy." *Id*. at 325–26. Arriaga-Guerrero's citation to *Burks v. United States*, 437 U.S. 1 (1978), is inapposite, for "*Burks* did not deal with the situation in which a trial court declares a mistrial because of a jury's inability to agree on a verdict." *Richardson*, 468 U.S. at 323. Rather, "*Burks* established only that an appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction is for double jeopardy purposes, the equivalent of an acquittal." *Id*. at 325.

*Richardson* and *Burks*'s boundaries are no longer an open question in this Circuit. *See United States v. Achobe*, 560 F.3d 259 (5th Cir. 2008); *Vanderbilt v. Collins*, 994 F.2d 189 (5th Cir. 1993); *United States v. Miller*, 952 F.2d 866 (5th Cir. 1992).

> After [*Justice of Boston Municipal Court v. Lydon*, 466 U.S.294 (1984)] and *Richardson*, it appears that there are only three possible jeopardy terminating events: (1) an acquittal, (2) a trial court determination of insufficiency leading to a directed verdict of acquittal, and (3) an unreversed determination on direct appeal that there was insufficient evidence to support the conviction. In the absence of one of these events, a later determination that there was insufficient evidence apparently will not bar a retrial.

*Vanderbilt*, 994 F.2d at 195 (footnotes omitted). With respect to appeals from first-trial sufficiency decisions, "*Miller* holds that after *Richardson*, the *Burks* bar only prevents retrial when the appellate court *in fact* reverses for insufficient evidence." *Id.* Thus, when defendants raise first-trial insufficiency arguments in a subsequent trial, *Miller*, *Vanderbilt*, and now *Achobe* dictate that our task is not to determine whether original jeopardy *should have* ceased before retrial because of the insufficiency argument; rather, we determine only the narrower question of whether original jeopardy *actually* ceased before retrial. *Achobe*, 560 F.3d at 265–68; *Vanderbilt*, 994 F.2d at 195.[5] The district court denied Arriaga-Guerrero's first-trial motions for acquittal, the first trial's jury did not acquit Arriaga-Guerrero, and Arriaga-Guerrero did not present a favorable appellate ruling on the sufficiency issue to the district court. As a result,

---

[5] While our holding in *United States v. Wilkinson*, 601 F.2d 791 (5th Cir. 1979), supports Arriaga-Guerrero's argument, *Achobe* decided that *Richardson* had effectively overruled *Wilkinson*. *See Achobe*, 560 F.3d at 266–67.

Arriaga-Guerrero's first-trial insufficiency and Double Jeopardy Clause arguments do not demonstrate plain error.

2.    Sufficiency

In his second issue, Arriaga-Guerrero challenges his convictions on both counts by arguing that the second trial's evidence was insufficient to support a verdict on either charge. Because Arriaga-Guerrero raised his sufficiency argument in a motion for judgment of acquittal, we review the district court's denial of that motion by examining the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and asking whether a rational trier of fact could have found guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006). Contrary to Arriaga-Guerrero's assertion, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 & n.3 (5th Cir. Unit B 1982) (en banc). "A jury is free to choose among reasonable constructions of the evidence." *Id*. at 549.

Arriaga-Guerrero's conviction on Count One—conspiracy to possess more than 1,000 kilograms of marijuana with intent to distribute—required proof that "(1) an agreement existed between the defendant and one or more persons to violate the applicable narcotics laws; (2) each defendant knew of the conspiracy and intended to join it; and (3) the defendant participated voluntarily in the conspiracy." *United States v. Infante*, 404 F.3d 376, 385 (5th Cir. 2005); *see United States v. Aguirre Aguirre*, 716 F.2d 293, 297 (5th Cir. 1983) ("In a drug conspiracy case, however, under the provisions of the drug conspiracy statute,

proof of an overt act in furtherance of the conspiracy is not necessary."). Arriaga-Guerrero's conviction on Count Two—possession of approximately 759 kilograms of marijuana with intent to distribute—required proof of "(1) possession, (2) knowledge, and (3) intent to distribute." *Valdez*, 453 F.3d at 260 n.7. The government's aiding and abetting theory on Count Two required proof that "the defendant: (1) associated with a criminal venture; (2) participated in the venture; and (3) sought by action to make the venture successful." *Infante*, 404 F.3d at 385.

Initially, Arriaga-Guerrero argues that the jury could not have relied upon Juan Garcia's testimony because of Juan Garcia's regular drug use. However, it is now well established that "whether judges doubt the credibility of a witness, even an accomplice cooperating with the Government, is beside the point in reviewing a sufficiency claim such as this—with the exception of cases where a witness' testimony is so incredible or insubstantial that, as a matter of law, we may discredit it." *United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992); *accord United States v. Lopez*, 74 F.3d 575, 578 (5th Cir. 1996). Such cases "typically involve testimony about an event that could not have occurred 'under the laws of nature,'" *Greenwood*, 974 F.2d at 1458 (quoting *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991), and this is not that kind of case. The question of Juan Garcia's credibility was one for the jury.

Next, Arriaga-Guerrero argues that the government never established the existence of an actual agreement between Arriaga-Guerrero and the persons who conducted the November 30 marijuana trafficking operation. The evidence of this fact was not insufficient because Juan Garcia testified that Arriaga-Guerrero asked to participate in the November 30 operation, and that

16

he and Arriaga-Guerrero agreed that Arriaga-Guerrero would serve as a lookout. In addition, a federal agent testified that Arriaga-Guerrero admitted that he carried out the agreement. While Juan Garcia did not testify to reaching an agreement as to *payment* for that day's work, a conspiracy conviction does not require proof of such details, *see United States v. Dean*, 59 F.3d 1479, 1488–89 (5th Cir. 1995); *Aguirre Aguirre*, 716 F.2d at 297 ("[P]roof of the defendant's knowledge of all the details of the drug conspiracy is not required, as long as knowledge of the essential details is established, and the defendant need neither have been present at the inception of the conspiracy, nor have played a major role therein."). Rather, the jury was entitled to infer the existence of an agreement from Juan Garcia's testimony and the other circumstantial evidence. *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir. 1982) ("A conviction will not be reversed for lack of evidence that a defendant was acquainted with or knew all of the coconspirators, or lack of evidence that he knew each detail of the conspiracy, or because he became a member of the conspiracy after its inception, or played only a minor role in the overall scheme." (citations omitted)).

Along similar lines, Arriaga-Guerrero argues that the government failed to prove that Arriaga-Guerrero was acting as a lookout for Salvador Guerrero's marijuana operation, as opposed to Salvador Guerrero's cocaine operation or an operation directed by someone else. The evidence of this fact was not insufficient for two reasons. First, the government provided direct evidence of this fact in the form of Juan Garcia's testimony that he saw Arriaga-Guerrero serving as a lookout that day, as well as evidence of Arriaga-Guerrero's admission of the same. Second, the jury could have inferred that Arriaga-Guerrero was looking

out for Salvador Garcia's marijuana operation from the government's circumstantial evidence—namely, evidence that Arriaga-Guerrero volunteered to work for Salvador Garcia's operation that morning, that Juan Garcia ordered him to serve as a lookout for Salvador Garcia's marijuana operation by going to that location, that Arriaga-Guerrero then went to the lookout location and stayed until the completion of the operation, and that Arriaga-Guerrero associated with the members of Salvador Garcia's operation that same evening. *See United States v. Lopez*, 979 F.2d 1024,1029 (5th Cir. 1992) ("Concert of action can indicate agreement and voluntary participation.").

Arriaga-Guerrero also argues that the government failed to prove the intent element of the possession count, which required proof that Arriaga-Guerrero knew that Salvador Garcia's group intended to distribute the marijuana and intended to aid the conspiracy in that respect. *See United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) ("Where a defendant is charged with aiding and abetting a crime involving an element which enhances or aggravates the offense, there must be proof that the defendant associated herself with and participated in both elements of the crime."). The evidence of these facts was not insufficient because juries are entitled to infer a defendant's intent to distribute from evidence that the defendant knew that the transaction involved a large amount of narcotics. *See United States v. Prieto-Tejas*, 779 F.2d 1098, 1103 (5th Cir. 1986) ("[T]he intent to distribute may be inferred from the quantity and quality of the cocaine in their possession and from possession of a scale of a type commonly used in the distribution of narcotics."). The jury heard testimony that Salvador Garcia's trafficking operation regularly sold very large quantities of marijuana, that Arriaga-Guerrero had participated in past

18

operations, and that Arriaga-Guerrero was present during the coordination of the November 30 operation. From this the jury could have inferred that Arriaga-Guerrero intended to further the conspiracy's goal of distributing the 759 kilograms of marijuana involved in that day's operation.

### 3. Jury Instructions

In his third issue, Arriaga-Guerrero challenges the district court's jury instructions by arguing that the district court should have included a limiting instruction concerning the cocaine evidence challenged by Salvador Garcia. Specifically, Arriaga-Guerrero argues that the district court should have instructed the jury as to the limited purposes for which the evidence of Salvador Garcia's acts of cocaine packaging and trafficking could be used, and that the court should have instructed the jury not to use that evidence against Arriaga-Guerrero. Arriaga-Guerrero raised this issue for the first time in his reply brief; this despite our earlier order directing counsel to "file a brief addressing whether the admission of [certain testimony regarding cocaine transportation and packaging activities] was erroneous." We often conclude that an appellant's failure to raise an issue in its brief on the merits results in waiver. *E.g.*, *Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1026 (5th Cir. 1992); *see* Fed. R. App. P. 28(a)(9)(A). However, we sometimes decide inadequately briefed issues *sua sponte* in cases of plain error. *United States v. Gonzalez*, 259 F.3d 355, 359 (5th Cir. 2001); *United States v. Pineda-Ortuno*, 952 F.2d 98, 104–05 (5th Cir. 1992).

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are

> obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Atkinson*, 297 U.S. 157, 160 (1936); *accord Silber v. United States*, 370 U.S. 717, 717–18 (1962) (per curiam) (collecting cases); *Gonzales*, 259 F.3d at 359; *Pineda-Ortuno*, 952 F.2d at 104–05; *United States v. Adams*, 634 F.2d 830, 836 (5th Cir. Unit A Jan. 1981). We choose to consider Arriaga-Guerrero's argument that the trial court failed to provide a limiting instruction addressing the cocaine evidence because Salvador Garcia and the government briefed the issue, and because the error is likely to arise in a subsequent habeas proceeding. *See Gonzales*, 259 F.3d at 359; *Pineda-Ortuno*, 952 F.2d at 105. Nonetheless, Arriaga-Guerrero's argument fails.

We again review the content of the district court's jury instruction for plain error because Arriaga-Guerrero failed to object at trial and request either of the instructions he now seeks. *See United States v. Delgado*, 401 F.3d 290, 299 (5th Cir. 2005). Arriaga-Guerrero's challenge to the instruction fails to demonstrate plain error for the same reasons that Salvador Garcia's challenge to the jury instruction fails: the district court did not commit plain error when it admitted the cocaine evidence, and the jury convicting Arriaga-Guerrero heard the same instruction that prevented reversible prejudice with respect to Salvador Garcia. By instructing the jury that "[t]he defendant is not on trial for any act, conduct, or offense not alleged in the indictment," the district court mitigated the prejudice resulting from the cocaine evidence in this case. *See Parziale*, 947 F.2d at 129; *see also United States v. Peterson*, 244 F.3d 385, 394 (5th Cir. 2001). Arriaga-Guerrero has failed to demonstrate that the district

court's instructions "seriously affect[ed] the fairness, integrity, or public reputation of [the] judicial proceedings." *Atkinson*, 297 U.S. at 160.

## C. *Jorge Garcia*

### 1. Sufficiency

In his first issue, Jorge Garcia challenges his convictions on both counts by arguing that the government presented insufficient evidence of his presence at the Aqua Verde property on the day of the seizure. According to Jorge Garcia, the testimony of law enforcement officials conflicted with that of the other witness, a convicted felon who testified to Jorge Garcia's presence that day. Because Jorge Garcia raised his sufficiency argument in a motion for judgment of acquittal, we review the district court's denial of that motion *de novo*, applying the same standard as the district court. *See supra* Part II.B.2; *United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006).

This argument does not undermine the Count One conspiracy conviction because that conviction did not require Jorge Garcia's presence at the Aqua Verde property on the day of the seizure. *See Valdez*, 453 F.3d at 256–57 (conspiracy elements). Nor did the Count Five possession conviction. *See United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008) ("Possession may be actual or constructive, may be joint among several defendants, and may be proven by direct or circumstantial evidence."); *United States v. Salinas-Salinas*, 555 F.2d 470, 473 (5th Cir. 1977) ("Constructive possession may be shown by ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed."). Instead, the jury was entitled to rely on the testimonial evidence from multiple witnesses that Jorge Garcia owned the Aqua Verde property, that Jorge Garcia

had agreed to assist the operation by making the property available as a storage location, and that the group had agreed to store the drugs from the November 30 operation at Jorge Garcia's property. *See United States v. Vergara*, 687 F.2d 57, 61–62 (5th Cir. 1982) (affirming a jury's inference of constructive possession from evidence of control of the property and repeated engagements with coconspirators).

### 2.    Rule 16

In his second issue, Jorge Garcia challenges his conviction by arguing that the government violated Federal Rule of Criminal Procedure 16(a)(1)(E) by introducing photographs of the Aqua Verde home into evidence without first disclosing those photographs to Jorge Garcia. Upon a defendant's request, Rule 16 requires the government disclose to the defendant certain items "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). According to Jorge Garcia, the government's failure to disclose undermined his strategy of arguing that he did not live at the Aqua Verde home. "We review alleged discovery errors for abuse of discretion and will order a new trial only where a defendant demonstrates prejudice to his substantial rights." *United States v. Doucette*, 979 F.2d 1042, 1044–45 (5th Cir. 1992); *accord United States v. Cuellar*, 478 F.3d 282, 293 (5th Cir. 2007) (en banc), *rev'd on other grounds*, 128 S.Ct. 1994 (2008). Jorge Garcia's argument fails for at least two reasons.

Initially, Jorge Garcia fails to demonstrate that the district court abused its discretion when it refused to punish the government for a failure to disclose. The district court determined that the photographs in question were made available to the public, and that Jorge Garcia's inability to acquire the photos resulted from his attorney's confusion about how to ask the clerk's office for

22

access. In light of the rule that "there can be no violation of Rule 16 where . . . the defendant's lack of diligence is the sole cause of his failure to obtain evidence made available by the government," *Doucette*, 979 F.2d at 1045, the district court did not abuse its discretion when it refused to find a violation of Rule 16 here. Moreover, Jorge Garcia failed to demonstrate that the district court's admission of the photographs prejudiced his substantial rights. The district court found that the photographs created no surprise, and the other evidence at trial was sufficient to establish Jorge Garcia's participation in the conspiracy and his possession of the marijuana. That is, the evidence of conspiracy and possession that defeats Jorge Garcia's sufficiency argument also defeats the prejudice component of his Rule 16 argument.

Jorge Garcia also argues that the government's failure to disclose the photographs violated the government's duty to disclose evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).

> To make out a *Brady* violation, "a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." "Evidence is material under Brady when there is a 'reasonable probability' that the outcome of the trial would have been different if the suppressed evidence had been disclosed to the defendant."

*United States v. Miller*, 520 F.3d 504, 514 (5th Cir. 2008) (footnote omitted) (quoting *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002)). This argument fails for multiple reasons, the simplest of which is that the photographs Jorge Garcia challenges do not trigger *Brady* protections because they are inculpatory, not exculpatory. *See United States v. Johnson*, 872 F.2d 612, 619 (5th Cir. 1989).

3.    Sentencing

Finally, Jorge Garcia challenges his sentence by arguing that the district court added two levels to the original offense level when it actually intended to subtract two levels to account for Jorge Garcia's role in the offenses.  Jorge Garcia does not challenge the district court's calculation of the base offense level, and does not challenge the substance of the district court's sentencing decisions. Instead, Jorge Garcia argues only that the district court "inadvertently added two points to the offense level after stating its intention to subtract out two levels for [Jorge Garcia's] role."  Because Jorge Garcia objected to the omission of a role reduction in the district court, we review the district court's application of the United States Sentencing Guidelines *de novo* and its factual findings for clear error.  *See, e.g.*, *United States v. Barrera-Saucedo*, 385 F.3d 533, 535 (5th Cir. 2004); *United States v. Garcia*, 242 F.3d 593, 599 (5th Cir. 2001).

Jorge Garcia's argument fails because the district court made no inadvertent calculation.  After calculating a base offense level of thirty-four, *see* United States Sentencing Guidelines Manual § 2D1.1(a)(3) (2004), the district court enhanced the base offense by two levels for possession of a dangerous weapon, *see id.* § 2D1.1(b)(1).  Although the presentence investigation report recommended another two level enhancement for organizing, leading, managing, or supervising the activity, *see id.* § 3B1.1(c), the district court rejected that recommendation.  The district court also rejected Jorge Garcia's request for a minor participant reduction, *see id.* § 3B1.2(b), and concluded that Jorge Garcia's involvement was "pervasive and over a long period of time."  Contrary to Jorge Garcia's suggestion, when the district court said that "[a]fter making the two-point adjustment, he's at a Level 36 when I subtract out his role," the court was

24

referring to its rejection of the § 3B1.1(c) role enhancement, not an acceptance of the § 3B1.2(b) reduction. The district court made its conclusion clear:

> The Court adopts the factual findings contained within the Presentence Report. However, the Court concludes that [Jorge Garcia] should not have been assessed with an enhanced role, that he was just a regular participant. After making this modification, this would result in an offense level of 36, which is a guideline range of 188 to 235 months.

Thus, as a matter of fact, the record defeats Jorge Garcia's contention that the district court intended to reduce the sentence to something less than level thirty-six.[6]

## III. CONCLUSION

For the foregoing reasons, the district court judgments are AFFIRMED in all respects.

---

[6] Jorge Garcia does not challenge the substance of the district court's rejection of the § 3B1.2 reduction argument.