**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 22, 2009

Charles R. Fulbruge III
Clerk

No. 09-30168

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

DAMIEN D ALLEN,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:08-CR-197-1

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Damien D. Allen appeals his conviction for possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). We AFFIRM.

## I. FACTS AND PROCEEDINGS BELOW

"We recite the facts in the light most favorable to the verdict." *United States v. Olis*, 429 F.3d 540, 541 n.1 (5th Cir. 2005). Corporal James Reed of the Calcasieu Parish Sheriff's Office conducted a routine traffic stop of a vehicle

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

operating without functioning taillights. As Reed came to a stop on the roadside, he illuminated the vehicle with a floodlight and the headlights from his patrol car. From his position, Reed observed two individuals in the stopped car: Allen and a passenger, later identified as Roland Jack. Immediately after coming to a stop, Allen exited his vehicle while waiving his hands in the air and stating: "I ain't got nothing. I ain't did nothing." Reed ordered Allen to get back into the vehicle and then approached the driver's side door while keeping a close eye on both occupants of the vehicle. Reed testified at trial that he maintained visual contact with both individuals during this entire interval out of concern for his safety.

Seconds after pulling Allen over, Reed was joined by two other officers, Mott and Wilcox, who had been traveling on the same road just a short distance behind Reed; they decided to provide assistance after hearing Reed report the stop over the radio. Wilcox took up a position behind Reed on the driver's side of Allen's vehicle. Mott proceeded to the passenger side of the vehicle to watch Jack. According to their combined testimony, at least one officer was watching Jack at all times during the traffic stop.

After ordering Allen back into the vehicle, Reed, now supported by Mott and Wilcox, began speaking with Allen. Reed testified that Allen was exceptionally nervous–more so than Reed typically observed in individuals pulled over for traffic violations. Reed asked Allen if any illegal items were in the vehicle and Allen said there were not. Reed next sought Allen's permission to search the vehicle because he had smelled marijuana as he approached the car and because of Allen's excessive nervousness. Allen refused to consent.

Reed then requested a K-9 officer be dispatched to confirm his suspicions that marijuana odors were emanating from the vehicle. Based on the dog's positive response, the officers conducted a search of Allen's vehicle. No drugs were found but Mott located a firearm in the center console of the vehicle. The

console was located between the driver and passenger seats in the front of the vehicle and could only be accessed by way of a hatch on the top of the console. The console was closed at the time officers conducted the search but the firearm was not concealed or covered within the console. Allen was then placed under arrest. Jack was also advised of his rights and questioned on the scene but he was never placed under arrest by any of the officers. Instead, he agreed to be transported to the police station to provide a voluntary statement.

Upon arriving at the police station, Jack was interviewed by Lt. Ray Laviolet of the Lake Charles Police Department. According to the testimony at trial, Laviolet asked Jack where he was going that evening, whether or not he owned the firearm discovered in Allen's car, and whether he knew who owned the firearm. Jack's answers to these questions were never admitted at trial in any form. Laviolet then testified that, based on this interview, he no longer believed Jack was a suspect. Following his interview with Jack, Laviolet continued his investigation into the discovery of the firearm. Laviolet conducted a title search and found that Allen was the sole owner of the vehicle.

Allen was subsequently indicted with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Allen pled not guilty and was tried before a jury. At trial, Allen stipulated that: 1) he had previously been convicted of a felony; 2) the firearm discovered in his vehicle was manufactured in California and, thus, necessarily traveled in interstate commerce to reach Louisiana; and 3) the firearm was fully operable at the time it was seized. Allen's defense focused exclusively on whether he had knowingly possessed the firearm discovered in his vehicle. The thrust of the defense case involved suggesting Jack had secreted the firearm in console during the traffic stop while the officers were occupied with Allen. At the end of a two-day trial, the jury returned a guilty verdict. Allen was subsequently sentenced to seventy-eight

months imprisonment and three years supervised release. Allen timely appealed.

## II. DISCUSSION

Allen asserts two claims of error on appeal. First, Allen claims the evidence presented at trial was not sufficient to establish that he constructively possessed the firearm discovered in the center console of his vehicle. Second, Allen claims the district court admitted impermissible hearsay evidence in violation of the Confrontation Clause. We address each claimed error in turn.

*A. Sufficiency of the Evidence*

Allen first claims that the Government failed to produce legally sufficient evidence to permit his conviction under 18 U.S.C. § 922(g)(1). To convict a defendant under § 922(g)(1), the Government must prove: 1) the defendant was a convicted felon; 2) the defendant possessed a firearm in or affecting interstate commerce; and 3) the defendant knowingly possessed the firearm. *United States v. Ferguson*, 211 F.3d 878, 885 n.4 (5th Cir. 2000). Allen stipulated to the first and second elements required by the statute, denying only the "knowing possession" element.

Where, as here, a sufficiency of the evidence argument is raised in a timely motion for judgment of acquittal, we "examin[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict, and ask whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Garcia*, 567 F.3d 721, 731 (5th Cir. 2009). "'It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)). "'A jury is free to choose among reasonable constructions of the evidence.'" *Id.* (quoting *Bell*, 678 F.2d at 549).

"'Constructive possession' [of contraband] is ownership, dominion, or control over the [contraband] itself, or control over the premises in which the [contraband] is concealed." *United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004) (citations omitted); *see also United States v. Speer*, 30 F.3d 605, 612 (5th Cir. 1994) (applying same "constructive possession" definition to contraband discovered in a vehicle); *United States v. Knezek*, 964 F.2d 394, 400 (5th Cir. 1992) ("[C]onstructive possession may also be inferred from the exercise of dominion or control over the vehicle in which the contraband is found."). "Although a defendant's exclusive occupancy of a place may establish his dominion and control over an item found there, his joint occupancy of a place cannot, by itself, support the same conclusion." *Houston*, 364 F.3d at 248. "In cases of joint occupancy, like the matter *sub judice*, we find constructive possession only where there is evidence supporting a plausible inference that the defendant had knowledge of, and access to, the item." *Id.* (citing *United States v. Hinojosa*, 349 F.3d 200, 203-04 (5th Cir. 2003)).

The Government contends that Allen's demeanor and excessive nervousness during the stop, coupled with his exclusive ownership of the vehicle and the unlikelihood that Jack could have concealed the weapon without being seen by the officers, provide sufficient evidence to uphold the verdict. Allen contends that the evidence of both his nervousness and his decision to jump from the car proclaiming his innocence was consistent with his claim that he was concerned about being caught smoking marijuana. He also argues that Jack might have been the one to conceal the gun, despite the fact Jack was watched by the officers throughout the traffic stop. These arguments misunderstand our requirement that the Government must demonstrate a "plausible inference" of knowledge. We will not reach beyond the proper bounds of review to *weigh* the evidence as Allen implicitly requests. *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) ("[T]he court may not make credibility

determinations or weigh the evidence, as those are jury functions."). While the jury could have believed Allen's suggestion of what happened, it was under no obligation to do so. Accordingly, we find no basis upon which to set aside the jury's verdict.

## B. *The Confrontation Clause*

Allen also claims the district court impermissibly allowed the introduction of hearsay statements throughout the course of the trial in violation of his rights under the Confrontation Clause. Specifically, Allen claims that several witnesses were permitted to testify as to statements made by Jack immediately following Allen's arrest. After reviewing the trial record, we find that the trial court did not err in allowing any of the disputed testimony.

Allen made no objection to the admission of any of the testimony he now claims violated his confrontation right. When the complaining party fails to object at trial we review a district court's evidentiary ruling only for plain error. *United States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006). To demonstrate plain error, the appellant must show the district court committed an error that was clear or obvious and that affected the defendant's substantial rights. *Id.* Even if the district court plainly erred, we will not correct the error unless "the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings." *United States v. Alvarado-Santilano*, 434 F.3d 794, 795 (5th Cir. 2005).

The Confrontation Clause bars the admission of out-of-court testimonial statements against a criminal defendant, unless the prosecution shows the out-of-court declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant on the out-of-court statement. *United States v. Pryor*, 483 F.3d 309, 312 (5th Cir. 2007) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). Testimonial statements may be admitted, however, so long as they are used to prove something other than the truth of the

matter asserted. *United States v. Holmes*, 406 F.3d 337, 349 (5th Cir. 2005); *see also Crawford*, 541 U.S. at 59 n.9 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."(citing *Tennessee v. Street*, 471 U.S. 409(1985)).

The district court did not plainly err by allowing the admission of any of testimony cited by Allen. We do not know what Jack said to the various officers who interviewed him December 4, 2005. Neither did the jury. At no point did any witness testify to any piece of information conveyed by Jack. Laviolet testified that he asked Jack whether the weapon was his and whether he knew to whom it belonged, and Jack responded. But, ultimately, Laviolet never testified as to the content of Jack's responses.

Allen argues that, by implication, the jury was told that Jack denied ownership of the gun. Even assuming, though, that the "statement" was "admitted" by inference and such admission triggers the Confrontation Clause, Allen still cannot prevail. Laviolet's testimony and all other references to Jack's statements were not offered to prove the truth of any statement by Jack. Instead, the disputed testimony was offered to explain why the officers did not fingerprint the firearm, look for DNA, or otherwise perform their investigation differently. Allen's defense strategy was to suggest the officers conducted a sloppy investigation. Laviolet's testimony was designed to show that the officers at least spoke with Jack before deciding to focus on Allen. That justification constitutes use of Jack's "statements," insofar as they were introduced, to prove something other than the truth of the matter asserted. Accordingly, Allen fails to show plain error under the Confrontation Clause. *See Crawford*, 541 U.S. at 59 n.9.

## III. CONCLUSION

The jury had more than sufficient evidence to conclude that Allen knowingly possessed the firearm discovered in his vehicle. His conduct the night

of his arrest, coupled with his ownership of the vehicle and the implausibility of the contention that Jack secreted the gun while being watched, was sufficient to create a plausible inference of knowledge and the Government was under no obligation to affirmatively disprove Allen's theory of the case.

Allen's Confrontation Clause claim similarly fails. Even assuming the disputed testimony introduced out-of-court statements, the admitted evidence was not offered to prove the truth of Jack's statements. Instead, the questioning of Jack was introduced to rebut Allen's contention that the officers' failed to conduct a complete and thorough investigation. As such, the admission of the disputed testimony did not violate Allen's confrontation right.

Accordingly, we AFFIRM.